United States District Court
Southern District of Texas
**ENTERED**
February 17, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TORRENCE R. IVY, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-456 |
| | § | |
| LORIE DAVIS, *et al,* | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Petitioner Torrence R. Ivy's Petition for Writ of Habeas Corpus and Respondent Lorie Davis' Motion for Summary Judgment.  Having carefully considered the Petition, the Motion, and the arguments and authorities submitted by the parties, the Court is of the opinion that respondent's motion should be GRANTED, and Ivy's petition should be DENIED.

I.    Background

The Texas Court of Appeals summarized the facts of this case:

> Albert Dussette, testified at trial that Ivy owed him money for cocaine that Ivy had recently purchased from Dussette. On the morning of the incident, Ivy asked Dussette for change for a fifty-dollar bill. Unbeknownst to Dussette, the fifty-dollar bill that Ivy gave him was a counterfeit. Later that day, Ivy used another counterfeit fifty-dollar bill to pay Dussette the money he owed him.
>
> Dussette testified that he suspected the fifty-dollar bills were counterfeit. Dussette made Ivy go with him and another man who lived with Dussette, John Lewis, to a nearby store to have the store clerk examine one of the bills. Dussette testified that the clerk checked the bill with a

"highlighted" pen and determined that it was a ten-dollar bill with a fifty-dollar bill copied on top of it.

Dussette testified that he and Ivy argued outside Dussette's house, in the car on the way to the store, and at the store, and that the argument became physical when they returned to Dussette's house. Dussette grabbed Ivy by the shoulder, slammed him against the wall, and was about to punch him, but instead told Ivy to replace the counterfeit fifty-dollar bills by 5:00 p.m.

Ivy returned to Dussette's house around 5:30 p.m. Dussette and Lewis were there, as was Andrea Thomas. Dussette testified that Lewis answered the front door and that Ivy told Lewis to "put [Dussette's] dog up" so that Ivy could come inside. Dussette testified that he told Lewis to "put the dog up" and then went to the door, where he saw Ivy take a firearm out of his pocket and start shooting. The first bullet hit Dussette in his shoulder. Dussette testified that he shut the door, but Ivy kept shooting through the door.

Lewis's testimony was consistent with Dussette's. Lewis testified that when he opened the front door, Ivy did not come in because he was scared of the dog, and that even after Lewis placed the dog in a back room, Ivy still would not enter. Lewis testified that Ivy was still outside the front door when Dussette went to the doorway. Lewis testified that he did not see a firearm in Ivy's hand because Dussette blocked his view of Ivy, but that he heard the shot fire from where Ivy was standing. Lewis testified that he started to turn and accidentally bumped Dussette, causing Dussette to hit the door, and the door to shut. Lewis testified that there were five or six shots total.

Thomas testified that she saw Ivy holding a firearm when Ivy was standing outside the front door and that she heard five shots total. Dussette,

> Lewis, and Thomas each testified that none of them had a weapon.
>
> No firearm was found at the scene, but Officer S. Morton with the Houston Police Department testified that he found four shell casings outside the front door and one just inside the doorway.
>
> Lewis and Dussette testified that they told the police that Ivy was the shooter. Officer Morton testified that Lewis and Thomas described Ivy as the suspect and Lewis supplied Ivy's address. Officer M. Rippy with the Houston Police Department testified that about four days after the shooting, he re-interviewed Dussette and Lewis to confirm the initial report and they again identified Ivy as the suspect.

*Ivy v. State*, No. 01-13-00504-CR, 2014 WL 3398352, at *1–2 (Tex. App. [1st Dist.] July 10, 2014), pet. ref'd.  Ivy was convicted in the 434th Judicial District Court of Fort Bend County, Texas of aggravated assault with a deadly weapon, enhanced by a prior conviction for sexual assault, and was sentenced to 55 years imprisonment.

The 1st Court of Appeals affirmed the conviction and sentence, *Ivy v. State*, No. 01-13-00504-CR, 2014 WL 3398352, at *1–2 (Tex. App. [1st Dist.] July 10, 2014). Ivy filed a petition for discretionary review ("PDR"), but the Texas Court of Criminal Appeals ("TCCA") refused it on November 26, 2014.  *Ivy v. State*, No. PDR 1009-14 (Tex. Crim. App. 2014).

Ivy filed an application for a state writ of habeas corpus.  The TCCA denied relief without written order.  *Ex Parte Ivy*, No. WR-84.375-01 (Tex. Crim. App. Jan. 20. 2016). He filed this federal petition on February 22, 2016.  Respondent moved for summary judgment on June 28, 2016.  Ivy did not respond to that motion.

## II.  The Applicable Legal Standards

### A.    The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).  For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]."  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state

court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The sole inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

B.    The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000).  In ordinary civil cases a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Where, however, a state prisoner's factual allegations have been resolved against him by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor.  *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981).  In reviewing factual determinations of the Texas state courts, this court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

III.    Analysis

Ivy's petition raises 12 claims for relief.   These are addressed in turn

A.    Procedurally Defaulted Claims

Respondent Davis argues that claim 12, one of Ivy's claims of ineffective assistance of counsel, is unexhausted and procedurally defaulted, and that Ivy's claims 4 and 7 are procedurally defaulted.

1.    <u>Unexhausted Claim</u>

In claim 12, Ivy contends that he received ineffective assistance of counsel because his trial counsel did not explain to him the consequences of rejecting a plea offer.  Ivy did not raise this claim in his state habeas corpus application or on direct appeal.

The AEDPA requires that a prisoner exhaust his available State remedies before raising a claim in a federal habeas petition.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  As the Fifth Circuit explained in a pre -AEDPA case, "federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as factual allegations supporting those grounds. "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief."  *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000); *see* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . .").

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed without prejudice, allowing the petitioner to return to the state forum to present his unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509 (1982).  Such a result in this case, however, would be futile because Petitioner's unexhausted claims would be procedurally

barred as an abuse of the writ under Texas law.  On habeas review, a federal court may not

consider a state inmate's claim if the state court based its rejection of that claim on an

independent and adequate state ground.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).

A procedural bar for federal habeas review also occurs if the court to which a petitioner must

present his claims to satisfy the exhaustion requirement would now find the unexhausted

claims procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas prohibits successive writs challenging the same conviction except in narrow

circumstances.  Tex.CodeCrim.Proc.Ann. art. 11.071 § 5(a).  The Texas Court of Criminal

Appeals will not consider the merits or grant relief on a subsequent habeas application unless

the application contains sufficient specific facts establishing the following:

> (1) the current claims and issues have not been and could not
> have been presented previously in a timely initial application or
> in a previously considered application filed under this article or
> Article 11.07 because the factual or legal basis for the claim was
> unavailable on the date the applicant filed the previous
> application;
>
> (2) by a preponderance of the evidence, but for a violation of the
> United States Constitution no rational juror could have found
> the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the
> United States Constitution no rational juror would have
> answered in the state's favor one or more of the special issues
> that were submitted to the jury in the applicant's trial under
> Article 37.071, 37.0711, or 37.072.

*Id.*  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and

strictly.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not claim that he could not have presented the claim in his direct

appeal or his state habeas petition because the factual basis for the claim did not exist, or that

he is actually innocent.   Therefore, Petitioner's unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in the Texas courts.  The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.  "This doctrine ensures that federal courts give proper respect to state procedural rules."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

"Cause" for a procedural default requires a showing that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule, or a showing of a prior determination of ineffective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Amadeo v. Zant*, 486 U.S. 214, 222 (1988). A "miscarriage of justice" means actual innocence.  *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992).  To show actual innocence,

> [T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Kuhlmann v. Wilson*, 477 U.S. 436, 455 n.17 (1986). More succinctly, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the evidence now presented. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Ivy acknowledges that this claim is unexhausted and procedurally defaulted, but asks this Court to review the claim under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). In *Martinez*, the Supreme Court carved out a narrow equitable exception to the rule that a federal habeas court cannot consider a procedurally defaulted claim of ineffective assistance of counsel.

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 . . . (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Martinez*, 132 S.Ct. at1318-19. In this case, however, Ivy represented himself in his state postconviction proceedings. *See* SH[1] at 88 (Doc. # 14-31). Because Ivy did not have counsel in his state habeas proceedings, he cannot have received ineffective assistance of counsel. Therefore, *Martinez* is inapplicable to this case.

Ivy makes no other showing of cause for his default. While Ivy contends that he is actually innocent of the crime, his argument on actual innocence consists of claiming that there was no biological evidence tying him to the crime. Biological evidence is not required

---

[1]     "SH" refers to the transcript of Ivy's state habeas corpus proceedings.

to obtain a conviction, however.  Ivy therefore fails to demonstrate that he is actually innocent, and this Court cannot review Ivy's unexhausted claim.

### 2.    Other Procedurally Defaulted Claims

In his fourth claim for relief, Ivy contends that the trial court erroneously refused to allow him to pursue certain cross-examination.  In his seventh claim for relief, he contends that the prosecutor engaged in improper closing argument.

Ivy raised both of these claims on appeal.  The Texas Court of Appeals found that they were not preserved for appellate review.  *See Ivy v. State*, 2014 WL 3398532 at *3, *5 (Tex. App. [1st Dist.] July 10, 2014).  Ivy makes no showing of cause for his defaults. Therefore, this Court cannot review these claims.

### B.    Trial Court Error

In his first claim, Ivy contends that the trial court erred in refusing to include in the jury charge a portion of Ivy's requested limiting instruction on an extraneous offense.  In his third claim, he contends that the court erroneously allowed evidence relating to Ivy's prior convictions.  In his fifth claim, he contends that the court erred in denying his request, during the State's punishment phase closing argument, to reopen the case to allow Ivy to testify.

Trial court error rises to the level of a constitutional violation only if the error renders the trial fundamentally unfair.  *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984).  A trial is fundamentally unfair if there is a reasonable probability that the verdict would have been different absent the error.  *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988).

In reviewing evidentiary rulings of a state court, a federal habeas court "do[es] not sit as a super state supreme court to review error under state law."  *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983), *cert. denied*, 469 U.S. 873 (1984).  A federal court may grant

habeas relief "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process clause." *Bailey*, 744 F.2d at 1168.

        1.      <u>Extraneous Offense Claims</u>

Ivy simply argues that the trial court's rulings on evidence of his extraneous offenses and his requested limiting instruction on the extraneous offenses were incorrect under state law.  He makes no showing that they rendered his trial fundamentally unfair.  He thus fails to raise a federal constitutional issue, and is not entitled to habeas corpus relief on these claims.

        2.      <u>Right to Testify</u>

Ivy asserts that, during the prosecutor's closing argument in the punishment phase of his trial, Ivy passed a note to his counsel stating that he wished to testify.  Counsel asked the court to reopen the case to allow Ivy to testify, but the trial court declined to do so because the defense had already rested.  Ivy contends that this was error.

A criminal defendant has a Fifth Amendment right to testify.  *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).  On Ivy's appeal, however, the state appellate court held that the trial court did not abuse its discretion because Ivy made no proffer to show how his testimony would have changed the outcome of the trial.

Assuming that the trial court did, in fact, err in refusing to allow Ivy to testify, Ivy nonetheless fails to show that he is entitled to relief.  As noted above, the standard of review for claims of erroneous evidentiary rulings is whether the ruling rendered the trial fundamentally unfair.  "The burden of proving that a constitutional violation occurred is, of course, on a habeas petitioner."  *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000).

As at trial, Ivy makes no proffer, and thus no showing that his testimony would have had any impact on the outcome of the trial.  He therefore fails to demonstrate that the trial

court's ruling amounted to an error of constitutional magnitude, and he is not entitled to relief.

C.   Accomplice Testimony

In his second claim for relief, Ivy contends that the only evidence connecting him to the crime was the testimony of Dussette, Lewis, and Thomas.  He argues that these three were accomplices, and that he cannot be convicted based solely on their uncorroborated testimony.

The requirement that accomplice testimony be corroborated is purely a creation of state law.  *See*, *e.g.*, *Cruz v. Johnson*, 159 F.3d 1355 (5th Cir. 1998).  As such, this claim does not identify any constitutional infirmity in Ivy's trial.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Because this claim fails to identify any constitutional error, it fails to raise a cognizable claim for relief.

D.   Prosecutorial Misconduct

In his sixth claim for relief, Ivy argues that the prosecutor made misstatements in his closing argument.  The prosecutor said:

> When I read the indictment to you at the beginning of the trial, some of the including words in that indictment were against the peace [and] dignity of the State, against the peace and dignity of the State of Texas and the community. And that's very important in this case because we're here to seek a guilty verdict against Mr. Ivy, not because he put a bullet through a drug dealer, but because he shot multiple times into a house occupied by multiple people including a pregnant woman and two children. This could have been a lot worse, it could have been a lot worse.

> And if someone was seriously hurt or someone were killed,
> you're darn right we're going to come in here and prosecute for
> another crime.

3 Tr. at 170-71.[2]  Ivy objected to this as speculative argument, and was overruled.

"To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)).  "'A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'"  *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992)), *cert. dismissed*, 531 U.S. 1134 (2001).  The Fifth Circuit has observed that a "prosecutor's improper [conduct] will, in itself, exceed constitutional limitations in only the most egregious cases."  *Menzies v. Procunier*, 743 F.2d 281, 288-89 (5th Cir. 1984).  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."  *Barrientes*, 221 F.3d at 753 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Under Fifth Circuit law, this court must apply a two-step analysis in reviewing claims of prosecutorial misconduct.  *See United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000); *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999).  First, the Court must determine whether the prosecutor made an improper remark.  *Wise*, 221 F.3d at 152.  "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant."  *Id.*

---

[2]      "Tr." refers to the transcript of Ivy's trial.

Under Texas law, a prosecutor may present argument to the jury on four types of issues:  (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement.  *Moody v. State*, 827 S.W.2d 875, 894 (Tex.Crim.App. 1992).

The state appellate court found that the comment about possible harm to other victims was a proper deduction from the evidence because the evidence showed that other people were in the house when Ivy shot.  This conclusion is reasonable, and is entitled to deference under the AEDPA.

Even if the argument was in some way improper, however, the improper comment would not rise to the level of a due process violation.

> [I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned, rather "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'  In order to constitute a denial of due process "'the acts complained of must be of such quality as *necessarily prevent a fair trial*.'" Moreover, the burden is on the habeas petitioner to also show a reasonable probability "that but for these remarks 'the result would have been different.'"

*Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir. 1995) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992); and *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986))(emphasis in *Nichols*).

The evidence of Ivy's guilt was strong, including eyewitness testimony.  Ivy makes no showing that the prosecutor's comment prevented him from receiving a fair trial.

E.      Ineffective Assistance of Counsel

Ivy raises four claims of ineffective assistance of counsel, in addition to the procedurally defaulted claim discussed above.   To prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed by the Sixth
> Amendment.    Second, the [petitioner] must show that the
> deficient performance prejudiced the defense.   This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prevail on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687-88.   Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. *Id.* at 688.  Review of counsel's performance is deferential.  *Id.* at 689.

Because the Texas state courts have already decided these claims against Ivy, he faces a very high burden in this federal habeas corpus proceeding.

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by *Strickland* and § 2254(d) are both "highly
> deferential," *id.,* at 689 [104 S.Ct. 2052]; *Lindh v. Murphy,* 521
> U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997),
> and when the two apply in tandem, review is "doubly" so,
> *Knowles* [*v. Mirzayance*]*,* 556 U.S., at ----, 129 S.Ct. [1411], at
> 1420. The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial. 556 U.S., at **----,** 129
> S.Ct., at 1420. Federal habeas courts must guard against the
> danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The
> question is whether there is any reasonable argument that
> counsel satisfied *Strickland* 's deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122-23 (2011).

In his eighth, ninth, tenth, and eleventh claims, Ivy contends that counsel rendered ineffective assistance by failing to investigate the crime scene for biological material, failing to test biological evidence before trial, and failing to hire an expert to determine if biological evidence existed.

       1.    <u>Failure to Investigate</u>

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690–91.

Trial counsel submitted an affidavit in connection with Ivy's state habeas application. In that affidavit, counsel averred that he investigated whether any biological material from a suspected shooter was recovered from the crime scene. The State informed counsel that no such material was recovered. By the time counsel was appointed, the crime scene had been abandoned for investigation purposes. *See* Petition, Exhibit C.

The state habeas court rejected the claim that counsel failed to conduct an adequate investigation, implicitly crediting counsel's assertions. Ivy makes no showing that counsel's assertions are inaccurate, or that there was actually any biological material to test. He further fails to demonstrate that the state habeas court's rejection of this claim was unreasonable.

Therefore, at a minimum, the state court's conclusion is entitled to deference, and Ivy is not entitled to relief.

> 2.    Failure to Hire an Expert

In his eleventh claim, Ivy contends that counsel was ineffective by failing to retain an expert to assess biological evidence.  Again, the record shows that no such material was recovered from the crime scene, and Ivy presents no evidence that such material existed. Counsel was not ineffective for failing to hire an expert to test non-existent material.

> F.    Actual Innocence

Ivy's tenth claim also appears to assert a claim that he is actually innocent based on the alleged biological evidence.  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).   This is so because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.*

## IV.    Conclusion

For the foregoing reasons, Ivy fails to raise a viable claim for habeas relief.  His petition must be dismissed with prejudice for the reasons stated in this opinion.

## V.    Certificate of Appealability

Ivy has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it

merely states that an appeal may not be taken without a certificate of appealability having

been issued.")  A petitioner may obtain a COA either from the district court or an appellate

court, but an appellate court will not consider a petitioner's request for a COA until the

district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th

Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court

should continue to review COA requests before the court of appeals does.").  "A plain

reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue

basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d

149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d

429, 431 (5th Cir. 1998).  A petitioner "makes a substantial showing when he demonstrates

that his application involves issues that are debatable among jurists of reason, that another

court could resolve the issues differently, or that the issues are suitable enough to deserve

encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.),

*cert. denied*, 531 U.S. 966 (2000).  The Supreme Court has stated that:

> Where a district court has rejected the constitutional claims on
> the merits, the showing required to satisfy § 2253(c) is
> straightforward:  The petitioner must demonstrate that
> reasonable jurists would find the district court's assessment of
> the constitutional claims debatable or wrong.   The issue
> becomes somewhat more complicated where . . . the district
> court dismisses the petition based on procedural grounds.  We
> hold as follows: When the district court denies a habeas petition
> on procedural grounds without reaching the prisoner's
> underlying constitutional claim, a COA should issue when the
> prisoner shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial
> of a constitutional right and that jurists of reason would find it

> debatable whether the district court was correct in its procedural
> ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)."  *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully considered Ivy's claims.  The Court finds that the claims are foreclosed by clear, binding precedent.  This Court concludes that under such precedents, Ivy has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court concludes that Ivy is not entitled to a certificate of appealability on his claims.

VI.   Order

For the foregoing reasons, it is ORDERED as follows:

A.    Respondent's motion for summary judgment (Dkt. No. 15) is GRANTED;

B.    Petitioner Torrence R. Ivy's Petition for Writ of Habeas Corpus (Dkt. No. 1) is in all respects DENIED; and

C.    No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Memorandum and Order.

SIGNED on this 17th day of February, 2017.

_____
Kenneth M. Hoyt
United States District Judge